IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| BERT ACKERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:20-cv-03061-MDH |
| ) | |
| HOWMEDICA OSTEONICS ) | |
| CORPORATIONS d/b/a STRYKER ) | |
| ORTHOPAEDICS, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendant OSARTIS GmbH's ("OSARTIS") Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. 53). For the reasons set forth herein, the Motion is **GRANTED** and the claims against OSARTIS are dismissed without prejudice.

## BACKGROUND

OSARTIS is a German corporation with its principal place of business in Germany. It is uncontested that the Court does not have general jurisdiction over OSARTIS. OSARTIS is a medical device company engaged in the business of developing, registering, and producing medical biomaterials and acrylic ("PMMA") bone cements for the fields of orthopaedics, trauma, and spinal surgery. In 2013, OSARTIS (known at the time as "aap Biomaterials GmbH") entered into a Supply Agreement with Stryker Ireland. Pursuant to the Supply Agreement, OSARTIS agreed to supply Simplex® HV bone cement product to Stryker Ireland. The PMMA bone cement known by the brand name Simplex® HV is used in joint replacement procedures and for the filling of benign osseous lesions.

Simplex® HV bone cement consists of a "powder" component and a "liquid" component (monomer). OSARTIS designs, manufactures, tests, and packages the bone cement powder at its facility in Germany. Stryker Ireland manufactures the bone cement monomer at its facility in Limerick, Ireland, in accordance with OSARTIS' design specifications. OSARTIS then tests the monomer to ensure it complies with the design specifications. Assuming the monomer passes OSARTIS' quality control review, Stryker Ireland distributes it among numerous small blistered glass ampules, which are then shipped to OSARTIS' facility in Germany. OSARTIS subsequently pairs individual packets of bone cement powder with individual glass ampules of monomer and places them into cardboard boxes. All of the individually boxed doses of Simplex® HV bone cement are then placed into larger cardboard boxes and shipped from OSARTIS' facility in Germany to Stryker Ireland's facility in Limerick, Ireland.

After Stryker Ireland inspects the Simplex® HV bone cement product it receives from OSARTIS, it ships the product to Howmedica Osteonics Corporation d/b/a Stryker Orthopaedics' ("HOC") facility in Mahwah, New Jersey, for distribution and sale to medical facilities in the United States.

On March 5, 2020, Plaintiff filed his Complaint against OSARTIS and HOC. In his Complaint, Plaintiff alleges that, on December 17, 2014, he underwent a right-sided Total Knee Arthroplasty ("TKA") performed by Victor Warren Wilson, M.D. at Mercy Orthopedic Hospital at Springfield in Ozark, Missouri. In the TKA procedure, Dr. Wilson allegedly utilized Simplex® HV bone cement to cement all of the components in Mr. Ackerman's right knee.

Plaintiff alleges that, on July 22, 2015, he underwent a revision surgery to remedy alleged aseptic loosening of the knee components utilized in his TKA procedure. Plaintiff alleges this loosening was caused by defective Simplex® HV bone cement.

## STANDARD

An action may be dismissed if the district court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "To allege personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (internal quotation and alterations omitted) (quoting *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1072 (8th Cir. 2004)). The plaintiff bears the burden of proving facts supporting personal jurisdiction. *Id*. (citing *Dever*, 380 F.3d at 1072). If the defendant filed no exhibits or affidavits in opposition to personal jurisdiction, the court takes the allegations of the complaint as true. *Hicks v. Clay Cnty., Mo.*, 636 F. Supp. 2d 903, 907 (W.D. Mo. 2008) (citation omitted).

Due process limits a court's ability to exercise personal jurisdiction over a nonresident defendant by requiring that the defendant have "minimum contacts" with the forum state and that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). In assessing whether the requisite minimum contacts exist, the "Constitutional touchstone" is whether the defendant *purposefully* established contacts in the forum state "such that he should reasonably anticipate being hauled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). As the Supreme Court observed, "this 'purposeful availment' requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* at 475 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

# DISCUSSION

OSARTIS argues that (1) it does not have minimum contacts with Missouri, and (2) Plaintiff's claims do not arise out of or relate to any activities of OSARTIS in Missouri. The Eighth Circuit has established a five-factor test to determine the sufficiency of a nonresident defendant's contacts with the forum state in determining whether personal jurisdiction over the nonresident defendant exists: "(1) the nature and quality of contacts with the forum state; (2) the quantity of the contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Dever,* 380 F.3d at 1073-74 (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir.1996)).

Significant weight is given to the first three factors. *Id.* at 1074. *See also Dever,* 380 F.3d at 1073-74 (reiterating same five factors and instructing courts to consider them). The Eighth Circuit has also "elaborated on the third factor–the relationship of the cause of action to the contacts–to distinguish between specific and general jurisdiction." *Burlington Industries*, 97 F.3d at 1102 (internal citations omitted). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Id.* at 1103 (internal citations omitted).

OSARTIS argues that it does not satisfy the Eighth Circuit test for establishing specific personal jurisdiction because OSARTIS has allegedly had no contacts with Missouri, and so has not purposefully availed itself of the privilege of doing the business in the forum state. OSARTIS argues that it: (1) has never sold or distributed any products whatsoever, including the product at issue in this case, to consumers, medical facilities, or other businesses in Missouri; (2) has never

directed any advertising, promotion, or marketing efforts to consumers, medical facilities, or other businesses in Missouri; (3) is not registered or licensed to operate directly in Missouri; (4) does not maintain an office in Missouri; (5) has never executed a contract in Missouri; (6) has never provided services in Missouri; (7) has never paid taxes in Missouri; (8) has never owned, rented, or leased real or personal property in Missouri; (9) has no assets in Missouri; (10) has never maintained a place of business in Missouri; (11) has never maintained a telephone or facsimile number in Missouri; (12) has never had any employees, agents, or representatives in Missouri; (13) has never actively or intentionally advertised or directed advertisements to Missouri residents or citizens that resulted in the sale of its products, including Simplex® HV bone cement, to Missouri residents or citizens; (14) has no officers or directors in Missouri and has never held an official corporate meeting in Missouri; and (15) has never designed, manufactured, or tested any products in Missouri. Furthermore, it argues that it did not know the final destination of the product, nor did it have an expectation that the product would be subsequently sold by Howmedica in Missouri. (Doc. 53, 9-10).

Plaintiff relies on the fact that OSARTIS' product was put into the stream of commerce and ultimately ended up in Missouri; that OSARTIS should have known its produce would end up in Missouri because it designed and manufactured it for Stryker to sell throughout the United States; that OSARTIS communicated and submitted approval documents to the U.S. Food and Drug Administration ("FDA") for Stryker to sell the product throughout the United States; and OSARTIS conducts post-market surveillance of its products in the United States.

The overarching authority for the issue at hand is the Supreme Court's opinion in *Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1773 (2017). There the Supreme Court held that the specific jurisdiction inquiry accordingly requires "a connection between the forum and the specific

claims at issue." *Id*. at 1781. In *J. McIntyre Mac., Ltd. V. Nicastro*, 564 U.S. 873 (2011), the Supreme Court found that specific jurisdiction required conduct directed specifically to the forum state rather than the United States as a whole. *Id*. at 878. The facts of *J. McIntyre* are also analogous to the case at hand. There, a plaintiff was injured while using a machine designed and manufactured by J. McIntye, a British corporation. The plaintiff filed suit in New Jersey state court, where the accident occurred, and their jurisdictional claim was based upon: (1) a United States distributor agreed to sell J. McIntyre's machines in the United States; (2) J. McIntyre's officials attended trade shows in several states; and (3) multiple machines ended up in New Jersey. The Court found that there was no specific personal jurisdiction over J. McIntyre by the New Jersey courts. In the case at hand, the only apparent connection between the product and Missouri is that the product ended up in Missouri through Stryker's distribution in the United States and the alleged injury occurred in Missouri.

The Missouri Supreme Court likewise recently ruled on a case with facts analogous to those at hand. In *State ex rel. LG Chem, Ltd. v. McLaughlin*, 599 S.W.3d 899 (Mo. June 2, 2020), the court found that Missouri courts did not have specific personal jurisdiction over the South Korean manufacturer of an e-cigarette battery that exploded and injured the plaintiff in Missouri. *Id*. The Missouri Supreme Court found:

> Because the sale of LG Chem's batteries into Missouri by an independent third party is the only contact between LG Chem and Missouri that Bishop alleges, Bishop has failed to establish LG Chem has sufficient minimum contacts with Missouri to allow Missouri courts to assert specific personal jurisdiction over LG Chem consistent with due process. Bishop, accordingly, has not carried his burden to demonstrate LG Chem's contacts with Missouri are sufficient to establish personal jurisdiction in this matter.

*Id.* at 904.

The Court agrees with OSARTIS' argument that finding specific jurisdiction here would not be consistent with due process. Plaintiff's asserted examples of OSARTIS' contacts with Missouri do not demonstrate any activities OSARTIS actually directed towards Missouri, but rather OSARTIS' connection with the United States as a whole. For this reason, the Court finds that it does not have jurisdiction over defendant OSARTIS pursuant to Rule 12(b)(2), and the claims against OSARTIS are hereby dismissed without prejudice.

## CONCLUSION

For the reasons set forth in this Order, the Court finds that it cannot exercise personal jurisdiction over defendant OSARTIS. The Motion is hereby **GRANTED** and all claims against OSARTIS in this case are hereby dismissed without prejudice pursuant to Rule 12(b)(2).

**IT IS SO ORDERED.**

Dated: November 10, 2020                 */s/ Douglas Harpool*
                                                                                   **DOUGLAS HARPOOL**
                                                                                   **United States District Judge**